UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-33-TS |
| | ) | |
| SOWANDE DIXIE | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Suppress [DE 31], filed by Defendant Sowande Dixie on April 7, 2008.

**BACKGROUND**

On April 25, 2007, the Government filed an Indictment charging the Defendant with violations of 21 U.S.C. § 841(a)(1) for possessing with intent to distribute more than 5 grams of crack cocaine, and 18 U.S.C. § 924(c) for possessing a firearm during and in relation to that drug trafficking crime. On April 7, 2008, the Defendant moved to suppress all evidence that officers obtained from him during a March 6, 2007, traffic stop, and any other evidence gained subsequent to this seizure as the fruits of an illegal search. The Government responded that the Defendant's actions during the traffic stop created reasonable suspicion of criminal conduct that justified prolonging the stop for a reasonable investigation.

On June 13, the Court conducted an evidentiary hearing on the Defendant's Motion to Suppress. The Defendant was present in court with his attorney, Robert Gevers. The Government was represented by AUSA Robert Trgovich. Fort Wayne Police Department Officer George Nicklow and Detective Miguel Rivera testified, and the Court received as evidence an in-car video, a traffic ticket, a tow and inventory form, and an advice of rights form. At the conclusion

of the hearing, the Court took the Motion under advisement and gave the parties additional time to file briefs.

On September 16, the Defendant submitted a post-hearing Memorandum in Support of Defendant's Motion to Suppress [DE 44]. He argues that the traffic stop exceeded the bounds of the Fourth Amendment when it was prolonged beyond its initial purpose related to the broken taillight. On October 20, the Government filed its Opposition to Defendant's Memorandum in Support of Defendant's Motion to Suppress [DE 47]. The Government maintains that the officer's actions fell within the safety exception to articulable suspicion, and that information lawfully developed during the stop provided the officer with reasonable suspicion of criminal conduct that justified prolonging the stop. On November 21, the Defendant filed his Reply Brief in Support of Defendant's Motion to Suppress [DE 50].

**FINDINGS OF FACT**

Upon consideration of the testimony of the witnesses and the exhibits admitted during the evidentiary hearing, the Court makes the following findings of fact.

Officer George Nicklow has been a patrol officer for six years, four of which have been in the southeast quadrant of Fort Wayne, Indiana. At 2:45 PM on March 6, 2007, Officer Nicklow was patrolling in his squad car when he saw a truck with a broken taillight. He activated his lights to stop the truck, which in turn activated the recording device inside his squad car.

The truck stopped and Officer Nicklow exited his car and approached the driver, who is the Defendant in this case. As he approached the vehicle, Officer Nicklow had his hand on his gun holster. When Officer Nicklow reached the truck, he asked the Defendant whether the truck

he was driving belonged to him. When the Defendant indicated that it did, Officer Nicklow asked him if he knew that the passenger-side taillight was not working properly. The Defendant responded that he had something to fix the light and began looking for something inside the truck. Officer Nicklow told the Defendant not to go digging around for it, and then asked to see the Defendant's driver's license, registration, and proof of insurance. The Defendant said that he did not have proof of insurance, but that he was insured. After the Defendant provided Officer Nicklow with his driver's license and registration, Officer Nicklow started to return to his squad car. Just before Officer Nicklow left the Defendant's window, he told the Defendant to keep his hands on the wheel. As Officer Nicklow turned to go to his car, the Defendant moved his hands off of the wheel, and Officer Nicklow again told the Defendant to keep his hands on the wheel.

Officer Nicklow returned to his car and began logging his activity and checking the information the Defendant provided. As he was doing this, Officer Rich Paige parked behind Officer Nicklow, got out of his vehicle, and began talking to Officer Nicklow through his car window. When Officer Nicklow finished his tasks inside the squad car, which was less than five minutes after he first stopped the Defendant, he returned to the truck. Before Officer Nicklow got out of his car to return to the truck, he told Officer Paige, "I'm going to get him out just so you know." He testified that he made Officer Paige aware of this fact so that he would not be surprised when the Defendant got out of his truck, but would know that it was in response to Officer Nicklow's request. He testified that the reason for getting the Defendant out of the truck was to show him the taillight; the Defendant could then see for himself that the light was broken and that Officer Nicklow was not lying about it.

Officer Nicklow asked the Defendant to "jump out" of the truck "real quick" for him. As

3

the Defendant exited, he dropped his cell phone. When Officer Nicklow brought this to the Defendant attention, the Defendant retrieved the phone with his right hand as he reached his left hand back into the truck in the area under the driver's seat. Officer Nicklow tried to see what the Defendant was doing as he told him, "Just don't grab . . . here, here I'll get it. Don't go digging for nothing." (Supp. Hr'g, Ex. 1.) Officer Nicklow then showed the Defendant the broken taillight, explaining "so you know I'm not lying." (*Id.*) He told the Defendant that because he did not have proof of insurance, he could legally tow his truck, but stated "whatever," as an indication that he was not doing to do that. (*Id.*) At this time, Officer Nicklow had not written out a ticket because he did not intend to issue the Defendant a traffic citation. Officer Nicklow was holding the Defendant's driver's license and registration when he said, "Before I give you this back, you got any weapons or anything on you that I need to know about?" Officer Nicklow testified that the Defendant's action after he dropped his cell phone, in conjunction with his previous digging around in the truck and his failure to keep his hands where the officer asked, prompted him to ask the Defendant if he had any weapons on him. The Defendant immediately admitted to having a knife as he reached for his pants pocket. Officer Nicklow directed the Defendant to stop trying to get it. As Officer Nicklow began a pat down search, he asked if the Defendant had anything else. The Defendant said there was something else and began pointing to his jacket pocket. After some evasive and unintelligible responses, the Defendant admitted to having a gun. Officer Nicklow immediately asked the Defendant to put his hands behind his back and applied handcuffs. In response to Officer Nicklow's questions, the Defendant stated that he did not have a license for the gun.

The officers recovered a loaded gun from the Defendant's hip and also recovered crack

cocaine from a pocket. After the pat down search, Officer Nicklow asked the Defendant why he had a gun, if it was because of the "white stuff." Officer Nicklow eventually learned from dispatch that the Defendant did not have a permit for the gun and that he had prior felony convictions.

The Defendant was arrested and interviewed at the Fort Wayne Police Department by Detectives Miguel Rivera and Teresa Smith. The Defendant was advised of his rights, stated that he understood his rights, and stated that he was waiving his rights to speak to police. The Defendant made incriminating statements, including the fact that he had the firearm for protection during crack cocaine deals and to keep from getting robbed. Following the interview, the Defendant was released to cooperate with the police department to make cases against other drug dealers. Two days later, on March 8, the Defendant again met with detectives and made incriminating statements.

## CONCLUSIONS OF LAW

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810; *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very

minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Probable cause exists where the officer reasonably assesses the facts and concludes that a traffic violation occurred. *United States v. Muriel*, 418 F.3d 720, 725 (7th Cir. 2005). Any ulterior motive an officer may have for making the stop is irrelevant. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813).

Here, it is undisputed that the Defendant was driving a truck with a broken taillight, and that this justified the stop as a violation of Indiana Code. The Defendant argues that the stop, although reasonable in the beginning, was unlawfully prolonged when it extended beyond the scope and duration that was necessary to fulfill the purpose of the initial seizure. He submits that once Office Nicklow determined that he was not going to issue any traffic citation for the broken taillight, it was unreasonable for him to keep the Defendant's driver's license and registration to make the inquiry about weapons.

"[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The length of detention following a traffic stop based upon probable cause must be reasonable. *Id.*; *Muriel*, 418 F.3d at 725; *United States v. Childs,* 277 F.3d 947, 954 (7th Cir. 2002) (en banc) ("What the Constitution requires is that the entire process remain reasonable."). "The Fourth Amendment's reasonableness requirement strikes a balance between an individual's interest in being left alone and the public's interest in community safety, crime control, and the safety of law enforcement officers engaged in the work of protecting the public and investigating crime." *United States v. Jennings*, 544 F.3d 815, 819 (7th Cir. 2008).

Although "questions that prolong custody may affect the reasonableness of the detention," "[o]fficers need not have reasonable suspicion to ask questions unrelated to the purpose of the traffic stop." *Muriel*, 418 F.3d at 725; *see also United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005) (rejecting the defendant's argument that *Terry* governs traffic stops and prevents officers from investigating potential crimes other than the one that led to the stop).

> [T]he fourth amendment does not require the release of a person arrested on probable cause at the earliest moment that step can be accomplished. What the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public—for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent.

*Childs,* 277 F.3d at 953–54 (holding that it was a reasonable extension of a traffic stop for an officer to ask the driver of the car a question about marijuana and to further inquire whether he would consent to a search of the car). Asking a person stopped for a traffic offense whether he is committing any other crime is "not an unreasonable law-enforcement strategy" and does not turn the custody into an "unreasonable" seizure. *Id.* at 954.

Under controlling precedent, Officer Nicklow's stop of the Defendant was an arrest based on probable cause. As such, the Defendant did not have a right to be released the instant that Officer Nicklow completed the steps to check his license, registration, insurance, and outstanding warrants and to write a ticket or warning, as long as the total process remained reasonable. *Childs*, 277 F.3d at 953. Asking the Defendant to exit the truck did not turn the reasonable detention into an unreasonable one. In fact, a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle. *Pennsylvania v. Mimms*, 434 U.S.

7

106 (1977). Additionally, the fact that Officer Nicklow's inquiry about weapons was unrelated to the purpose of the stop does not, by itself, render the detention unreasonable. *Muriel*, 418 F.3d at 725 (finding that a detention during a traffic stop was reasonable despite the officer asking questions unrelated to the purpose of the stop where the detention was not unreasonably prolonged). Thus, neither the fact that Officer Nicklow asked the Defendant to exit the truck, or the fact that his inquiry about firearms was not related to the initial purpose of the stop, created an unreasonable seizure. The pertinent inquiry is whether the duration and scope of Officer Nicklow's seizure of the Defendant exceeded constitutional limits. The Court is aided by the in-car video tape and Officer Nicklow's testimony in making this determination.

Six and one-half minutes passed from the time Officer Nicklow stopped the Defendant to the time he placed him in handcuffs and learned that he was carrying a gun without a license. Officer Nicklow spent about one minute talking to the Defendant after he first pulled him over. The majority of the stop, over four minutes, was spent logging activity and checking the Defendant's information through official police channels. When Officer Nicklow asked the Defendant to come see the taillight and talked to him about not having proof of insurance, it took only seconds longer to ask the Defendant about weapons and to learn that he had a knife and an unlicensed gun. Officer Nicklow's actions before he asked about weapons were routine and part of reasonable law enforcement activity incident to the traffic stop. The incremental delay to ask the Defendant about activity unrelated to the stop did not unreasonably extend the otherwise lawful detention. The question held potential for detecting crime, yet created little or no

8

inconvenience to the Defendant.[1]

Further justification exists to deny the Defendant's Motion to Suppress: the Defendant's actions throughout the stop gave the officer reasonable suspicion to perform further reasonable investigation. *See United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (stating that information obtained during the time necessary to issue a traffic ticket "may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation"). After Officer Nicklow asked the Defendant to get out of the truck to see the broken taillight, his movements caused the suspicion that developed throughout the stop to further increase to a point that justified prolonging the seizure. When viewed in the totality of the circumstances, the Defendant's act of reaching back into the truck and digging around with his left hand while picking up his cell phone with his right hand would cause a reasonable officer to become suspicious that the Defendant had weapons or something else illegal inside the truck. This justified Officer Nicklow prolonging the stop for a reasonable amount of time to dispel or confirm his suspicions, which he accomplished with the question about weapons.

The Defendant argues that the officer could not have been concerned about weapons because he did "not respond in a manner to suggest that he has concern for his safety" and "there is no indication that [the Defendant] is doing anything other than attempting to retrieve the replacement part to show Officer Nicklow his ability to repair the broken tail light." (Def. Mem. 7; DE 44.) This does not account for the fact that by the time Officer Nicklow asked the

---

[1] The Defendant places much emphasis on Officer Nicklow keeping the Defendant's license and registration while he asked about weapons, arguing that it kept the Defendant from leaving and created a custodial situation. The Court does not think there is any dispute that the Defendant was not yet free to leave at that point in the stop when Officer Nicklow was showing him the taillight, explaining the consequences of not having proof of insurance, and asking about weapons. That Officer Nicklow kept his driver's license and registration during this time did not make the detention an unreasonable seizure under the Fourth Amendment.

Defendant to exit the truck he had already told the Defendant not to dig for anything inside the truck and to keep his hands on the wheel, both comments being prompted by the Defendant's movements. Thus, the Defendant should not have been trying to retrieve anything. Moreover, the area under the driver's seat was not a likely place to keep a replacement part for his truck. While reaching for a new taillight was a potentially innocent explanation for digging around in the passenger area of the truck when he was first stopped and informed of the broken light, reaching back into the truck later in the stop, combined with the failure to keep his hands on the wheel after being told, created a reasonable suspicion that the Defendant was trying to reach for a weapon or conceal contraband. The actions of the Defendant cannot be viewed in isolation. *See United States v. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007) (holding that even if an innocent explanation exists for individual factors taken separately, reasonable suspicion may arise when the factors are taken together).

Under the totality of the circumstances, Officer Nicklow was justified in prolonging the stop to ask the Defendant whether he had any weapons. When the Defendant responded in the affirmative and began reaching to retrieve it, Officer Nicklow was justified in conducting a pat down search and continuing his investigation. The Defendant's answers, which were not clear but indicated he had something else, justified further investigation. In a short period of time, this led to probable cause to believe that the Defendant unlawfully possessed a firearm and drugs.

The Defendant's argument that the incriminating statements he made during the March 6 and 8 post-arrest investigations should be suppressed are dependent on the March 6 seizure and arrest being unlawful. Because the Court has found that Officer Nicklow's seizure of the Defendant did not violate the Defendant's Fourth Amendment rights, his request to suppress

10

statements made during subsequent interviews is denied. The Government has assured in its brief filed in opposition to the Motion to Suppress that it will not seek to admit the non-*Mirandized* statement that the Defendant made to Officer Nicklow at the scene, rendering moot the portion of the Motion to Suppress that seeks suppression of that statement.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress [DE 31] is DENIED IN PART and RENDERED MOOT IN PART. A telephonic final pretrial conference is set for Monday, January 12, 2009, at 3:30 PM before Judge Theresa L. Springmann. The Court will initiate the call. A two day jury trial is scheduled for Tuesday, January 20, 2009, at 8:30 AM before Judge Theresa L. Springmann.

SO ORDERED on December 1, 2008.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT